288 F.2d 166
 109 U.S.App.D.C. 382
 LOCAL 483, INTERNATIONAL BROTHERHOOD OF BOILERMAKERS, IRON
SHIP BUILDERS, BLACKSMITHS, FORGERS & HELPERS OF
AMERICA, AFL-CIO, et al., Petitioners,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent, Standard Oil
Company of Indiana, Intervenor, Central States
Petroleum Union Local 115, Intervenor.
 No. 15850.
 United States Court of Appeals District of Columbia Circuit.
 Argued Jan. 12, 1961.
Decided March 2, 1961, Petition for Rehearing Denied March 22, 1961.
 
 Mr. Mozart G. Ratner, Washington, D.C., for petitioners.
 Mr. Frederick U. Reel, Atty., N.L.R.B., for respondent.
 Messrs. Stuart Rothman, Gen. Counsel, N.L.R.B., Dominick L. Manoli, Associate Gen. Counsel, N.L.R.B., Marcel Mallet-Prevost, Asst. Gen. Counsel, N.L.R.B., and Herman M. Levy, Atty., N.L.R.B., were on the brief for respondent.
 
 
 1
 Mr. Karl H. Mueller, Fort Worth, Tex., for intervenor Standard Oil Co. of Indiana.
 
 
 2
 Mr. Gerard D. Reilly, Washington, D.C., was on the brief for intervenor Central States Petroleum Union Local 115.
 
 
 3
 Mr. Lawrence T. Zimmerman, Washington, D.C., also entered an appearance for intervenor Central States Petroleum Union Local 115.
 
 
 4
 Mr. Fred H. Daugherty, a member of the bar of the Supreme Court of Illinois, Chicago, Ill., was allowed to appear pro hac vice for intervenor Central States Petroleum Union Local 115.
 
 
 5
 Before PHILLIPS, Senior United States Circuit Judge for the Tenth Circuit,* and PRETTYMAN and BAZELON, Circuit Judges.
 
 
 6
 PER CURIAM.
 
 
 7
 Petitioners are Local 483, International Brotherhood of Boilermakers, et al., a craft union, and seventeen employees of the Standard Oil plant at Wood River, Illinois. They seek to set aside an order of the National Labor Relations Board which dismissed complaints against the Company and Central States Petroleum Union (CSPU), an industrial union representing the operating and maintenance employees at the Company's Wood River plant. The detailed factual situation giving rise to these complaints is fully set forth in the Board's opinion, Local 115, Central States Petroleum Union, 46 L.R.R.M. 1001 (1960). In essence, petitioners contend that the denial of job transfer requests by several of the individual petitioners and the layoffs of all seventeen were the result of discriminatory conduct of the Company and CSPU and constituted unfair labor practices under the National Labor Relations Act.[1]
 
 
 8
 The seventeen individual petitioners had been employed in the Company's boilermaker department and temporarily assigned to other operating and maintenance tasks. In spite of their temporary jobs, the Board had determined that they were members of the boilermakers unit for purposes of the craft severance proceeding[2] initiated by Local 483. The denials of the job transfer requests occurred after the severance proceeding had been initiated but before the election. The layoffs occurred after Local 483 was successful in the election and the boilermakers unit, then represented by Local 483 instead of CSPU, was severed from the operating and maintenance unit represented by CSPU.
 
 
 9
 While the craft severance election was pending, the collective agreement between the Company and CSPU expired and a new agreement was made. This agreement, which included the seniority rules governing job transfer requests and layoffs, specifically excluded employees eligible to vote in the boilermakers unit election, including the seventeen petitioners. Accordingly, the Company subsequently denied the job transfer requests involved here.
 
 
 10
 The Board concluded that the exclusion which brought about this denial was proper in light of the policy of its Midwest Piping[3] rule which requires an employer faced with rival representation claims to maintain a strictly neutral position and not to bargain with any union as to the employees involved in the representation dispute. Similarly, the Board concluded that all members of the newly created craft unit, including the seventeen individual petitioners temporarily working outside of it, had only such seniority rights as their new bargaining representative obtained for them. It therefore held that the seventeen were without seniority on their temporary operating and maintenance jobs as a consequence of severance, and the layoffs were not occasioned by prohibited conduct.
 
 
 11
 This case reflects the difficult situations which often arise when craft severance requires readjustment of a highly complex seniority system.[4] We think the Board's resolution is a reasonable one and reflects a proper accommodation of the interests which the Act seeks to serve.
 
 
 12
 Affirmed.
 
 
 
 *
 Sitting by designation pursuant to Section 294(d), Title 28 U.S.C
 
 
 [1]
 Specifically, the complaint charged Standard with violations of 8(a)(1, 2, 3) and CSPU with violation of 8(b)(1)(A) and (2). National Labor Relations Act, 49 Stat. 452 (1935), as amended, 29 U.S.C.A. 158
 
 
 [2]
 This term, in Board parlance, signifies the removal as a result of an election of a craft group from a broader bargaining unit of which it was previously a part. See American Potash & Chemical Corp., 107 N.L.R.B. 1418 (1954)
 
 
 [3]
 Midwest Piping and Supply Co., 63 N.L.R.B. 1060 (1945)
 
 
 [4]
 See Jones, Self-Determination v. Stability of Labor Relations, 58 Mich.L.Rev. 313 (1960); Cox, The Legal Nature of Collective Bargaining Agreements, 57 Mich.L.Rev. 1, 12, (1958)